**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 15-23095-CIV-WILLIAMS/SIMONTON**

**SHERILYN J. LEROUX,**

**Plaintiff,**

**v.**

**NCL (BAHAMAS) LTD.,**

**Defendant.**
_____/

## ORDER ON DEFENDANT'S DAUBERT MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESSES RANDALL JAQUES AND JOHN LAUGHLIN

This matter came before the Court upon Defendant's Daubert Motion to Strike Plaintiff's Expert Witnesses Randall Jaques and John Laughlin, ECF. No. [37]. The Plaintiff has filed a Response to the Motion, ECF No. [38], and the Defendant has filed a Reply, ECF No. [42]. The Honorable Kathleen M. Williams has referred the Motion to the undersigned Magistrate Judge, ECF No. [72]. For the following reasons, the undersigned concludes that the Motion should be granted, in part, and denied, in part. Specifically, to the extent that the Defendant seeks to strike the testimony of Randall Jaques, the Motion is Granted, and to the extent that Defendant seeks to strike the testimony of John Laughlin, the Motion is Denied, except as to those opinions regarding adequate lighting.

### I.    BACKGROUND

This personal injury action was initiated when Plaintiff Sherilyn LeRoux ("Plaintiff" or "LeRoux") filed a Complaint against Defendant NCL (Bahamas) Ltd., ("Norwegian" or "NCL") related to injuries the Plaintiff suffered while aboard a cruise ship operated by Defendant Norwegian, ECF No. [1]. In the Complaint, Plaintiff alleges that on or about May 31, 2015, while she was a fare paying passenger aboard the M/V Norwegian Epic, she

sustained serious and disabling injuries to her right knee, hip and foot when she tripped over the threshold between her suite and patio, ECF No. [1] at 2. Plaintiff contends that her injuries were caused by the negligence of NCL by: 1) failing to adequately warn passengers of the dangers associated with a raised threshold; and, 2) not having a threshold that was designed and built to not constitute a tripping hazard, ECF No. [1] at 2. In the Defendant's Answer and Affirmative Defenses, the Defendant contends, *inter alia*, that the Plaintiff's own negligence contributed to the accident, that the Defendant had no notice or knowledge of the alleged unreasonably dangerous condition and therefore had no duty to warn the Plaintiff, and that the condition was open and obvious and should have been observed by Plaintiff through the ordinary use of her senses, ECF No. [6] at 2-3.

In her Supplemental Disclosures, the Plaintiff has identified several experts, two of whom are at issue in the Defendant's Daubert Motion to Strike, Randall Jaques, a Maritime Safety Consultant, and John Laughlin, an engineer, ECF No. [37]. The Plaintiff has filed a Response to the Motion to Strike, which includes amended reports from the witnesses at issue, ECF Nos. [38-2] [38-3]. The Defendant has filed a Reply, ECF No. [42].

II.      <u>MOTION TO STRIKE</u>

The Defendant has filed a Motion to Strike seeking to exclude Randall Jaques ("Jaques"), from testifying as a maritime safety expert in this action contending that Jaques is unqualified to render opinions that are beyond issues of safety and security, ECF No. [37] at 2. The Defendant contends that Jaques' opinions are bare and anecdotal and are not support by any methodology. Defendant further argues that the opinions consist of conclusory statements that are not helpful and thus fail to satisfy the requirements of Federal Rules of Evidence 702 and 703, as well as the requirements set

forth in *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). In support of its Motion, the Defendant notes that Jaques' testimony has been stricken or limited by courts in the past.

The Defendant has also moved to strike the testimony of John Laughlin, ECF No. [37]. Defendant contends that Mr. Laughlin's testimony should be excluded because it is unreliable and lacks discernible methodology, ECF No. [37] at 11. Defendant contends that Laughlin fails to cite any statistics, reports or publications to support his contention that the placement of stickers or striping on the threshold could eliminate a trip hazard and that the placement of such materials is a common method of marking step nosing to make them more visible. Defendant also criticizes Laughlin's opinion regarding adequate lighting and contends that Laughlin did not perform any type of lighting testing and did not examine the threshold under similar lighting conditions, but instead merely opines that the lighting was inadequate because it occurred at dusk. Finally, the Defendant contends that Laughlin's testimony will not assist the trier of fact because the opinion that a sticker or stripe on the threshold would have warned passengers of a trip hazard is not beyond the understanding of an average lay person.

The Plaintiff has submitted a response in opposition to the Defendant's Motion as well as amended reports from both Jaques and Laughlin, ECF No. [38]. In the written response, the Plaintiff contends that Jaques has worked as a security officer for 15 years on several different cruise lines where his principal duty was to personally investigate "every accident and its cause that occurred on the vessel, on the pier and during shore excursions." ECF No. [38] at 3. Plaintiff contends that he is therefore qualified to render opinions regarding ship industry standards. In support of this contention, after noting that a witness may be deemed to be an expert based upon his/her experience and/or

3

training, the Plaintiff cites an opinion from the case of *Joyce Higgs v. Costa Crociere*, No. 15-cv-60280-JIC (S.D. Fla. Jan. 12, 2016) wherein the Court  permitted Jaques to testify on industry standards for cruise ship safety practices and causation.  Plaintiff further contends that Jaques' opinions are reliable because he reviewed various materials, including NCL's photos and measurements and photos of identical thresholds on similar cruise ships.  The Plaintiff thus asserts that Jaques' opinions on the standard of care concerning floor-level obstructions meets the standards under *Daubert* and Federal Rule of Evidence 702. Further, Plaintiff contends that Jaques' opinions will be helpful to the trier of fact and do not offer improper legal conclusions, but rather are opinions regarding NCL's violation of industry standards. Finally, Plaintiff contends that any deficiencies in Jaques' opinions go to the weight and not admissibility of those opinions and should be challenged on cross-examination and not through a motion to strike.

As to Laughlin, the Plaintiffs emphasize his education, training and experience as a forensics engineer who has reconstructed various accidents including those involving walking surfaces.  Plaintiff argues that given Laughlin's extensive expertise, his opinions are not required to provide citations, statistics or reports, but may be based on his own skill, education and experience.  Further, Plaintiff argues that to the extent that the International Building Code that is referenced in Laughlin's opinions is not applicable to ships, information related to that Code is admissible to demonstrate how a reasonable person may have acted based upon the standards in the Code.  Plaintiff further dismisses Defendant's contention regarding Laughlin's opinions regarding adequate lighting by arguing that Laughlin is entitled to assume the disputed fact that the incident occurred at dusk in concluding that the lighting was inadequate.  Plaintiff additionally argues that engineering and human factors are not within the common knowledge of a lay juror.

4

Plaintiff requests that if the Court deems that the Plaintiff's expert reports are deficient, in the alternative to striking the opinions of Jaques and Laughlin, the Plaintiff be permitted to supplement those disclosures and reports, ECF No. [38] at 18.

In Reply, the Defendant first contends that the amended reports from the experts submitted for the first time with Plaintiff's opposition should be stricken because they are untimely and were filed after the Defendant had filed its Motion to Strike, ECF No. [42]. In addition, as to Jaques, the Defendant contends that he is not qualified to render any engineering opinions or opinions related to the use and placement of warning signs because his experience is in security and law enforcement. The Defendant then cites various other opinions in which Jaques has been excluded as an expert as to certain topics including *Mendel v. Royal Caribbean Cruises Ltd.*, 10-cv-23398 (S.D. Fla. 2010), *Fraley v. Oceania Cruise, Inc.*, No. 13-20244-CIV, 2015 WL 1131015 (S.D. Fla. March 12, 2015), and *Umana–Fowler v. NCL (Bahamas), Ltd.*, No. 13–cv–23491, 2014 WL 4832297, at *1 (S.D. Fla. 2013). The Defendant further contends that because Jaques did not inspect the ship and relied on photographs from another ship which displayed a different doorway than Plaintiff's cabin doorway, his opinions are not based upon a reliable methodology. Finally the Defendant contends that Jaques' opinions are not helpful to the trier of fact because those opinions only provide impermissible legal conclusions disguised as expert testimony.

As to Laughlin, in its Reply, the Defendant only contends that his opinions are unreliable because he relied, in part, on the International Building Code, which does not apply to cruise ships, ECF No. [42] at 6.

III.      **LEGAL FRAMEWORK AND ANALYSIS**

      A.    *Admissibility of Expert Testimony*

Federal Evidence Rule 702 governs the admission of expert testimony in federal court, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 714 (11th Cir. 2008) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). Thus, a Court performs a "gatekeeping role" regarding admissibility of expert testimony, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

The Eleventh Circuit has set out three requirements that an expert must meet before his or her opinions may be admitted. *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328 (11th Cir. 2014). First, the expert must be qualified on the matter about which he or she intends to testify. *Id.,* citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). Second, the expert must employ reliable methodology. *Id.*[1]

---

[1] In *Daubert*, the Supreme Court set out four non-exclusive criteria for reliability determinations: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *Wilson v. Taser Int'l, Inc.*, 303 Fed. Appx. 708, 714 (11th Cir. 2008) (citing *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 595. These factors may guide

Third, the expert's testimony must be able to assist the trier of fact through the application of expertise to understand the evidence or fact in issue. *Id.*

However, it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Rosenfeld v. Oceania Cruises, Inc.,* 654 F. 3d 1190 (11th Cir. 2011) (quoting *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). Indeed, "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002). See also *Quiet Tech.*, 326 F.3d at 1345 (noting that, "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility" (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

---

a district court's reliability inquiry, but the district court ultimately has "broad latitude" as to how it determines reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

B. *Application of Daubert and Rule 702 to Jaques' Testimony*

1. Randall Jaques' Preliminary Rule 26 Report[2]

As stated above, the Defendant seeks to exclude the testimony of Plaintiff's expert Jaques based upon his lack of qualifications, the unreliable methodology he utilized in arriving at his opinions, and because his testimony is not helpful to the trier of fact.

In the first paragraph of the Preliminary Rule 26 report, Jaques states that he was retained by the Chaffin Law firm to provide opinions in the LeRoux case related to why Mrs. LeRoux tripped and fell when coming inside of her cabin from the balcony, and to formulate opinions as to why NCL failed to place proper warning signs on the glass balcony doors, and warning yellow "Watch your step" striping along the base of the threshold, ECF No. [37-1] at 29. Jaques further states that he was asked to conduct a site inspection onboard the Norwegian EPIC but was unable to do so because the vessel was located in Europe. Jaques' Initial Preliminary Report offers the following opinions:

> 1. Norwegian cruise lines failed to apply or attach any kind of visual warning sign to the glass door, both on the inside of the stateroom and on the outside. This lack of visual

---

[2] As stated above, the Plaintiff has submitted Amended Reports for both Jaques and Laughlin which the Defendant has sought to strike as being untimely. The undersigned has reviewed the Amended Reports. For purposes of resolving the instant Motion to Strike, the undersigned has only considered the Preliminary Reports because the analysis regarding whether Jaques and Laughlin should be excluded is unaltered by the additional material included in the Amended Reports. In other words, the amendments to the Jaques' Report do not provide a basis for finding that Jaques has satisfied any of the requirements of Daubert; and the amendments to the Laughlin Report do not change the undersigned's determination that Laughlin is qualified to render the opinions he offers as to the hazard of the threshold and the need for signage, applied reliable methodology in reaching those opinions, and his opinions will assist the trier of fact. To the extent that the Plaintiff requests that she be permitted to amend her expert reports, the undersigned denies that request because the Plaintiff has offered no good reason for failing to provide such opinions prior to the expiration of the expert opinion deadline and prior to the Defendant filing its Motion to Strike.

safety warning to "Watch your Step, High Threshold" if mounted can be seen by the passenger immediately prior to exiting and entering the balcony door.  Because of the carless (sic) act NCL is at fault for Mrs. LeRoux tripping and falling as she entered the stateroom.

2. Norwegian Cruise Lines is at fault for failing to place additional yellow striping with black lettering on the threshold warning the passenger to "Watch your Step".  NCL is aware of this type of safety warning because they place these warning stripes throughout their vessels.  Had they placed this yellow warning striping Mrs. LeRoux could have and would have seen the high threshold and not tripped.

3. Norwegian Cruise lines is at fault for not following within the industry standard as other cruise line companies do, such as Disney, Crystal, and Celebrity.  Placing these signs is a (sic) industry standard to prevent this type of accident from happening and warning the passenger of the safety hazard in front of them.

ECF No. [37-1] at 34.  The Report also discusses the photographs from another trip and fall case (*Lamar v. Carnival*) and explains that the *Lamar* case demonstrates that when the foot strikes the threshold of a door, the passenger vaults forward, ECF NO. [37-1] at 35. Jaques posits that it is for this reason that cruise lines, including NCL, place warning signs on all doors leading out to open decks, ECF No. [37-1] at 7.  Jaques states that NCL fails to place those signs on the stateroom balcony which makes the threshold an unforeseen hazard and states that as a maritime expert in maritime industry standards that he knows that the steel deck surface is tremendously hard.

The undersigned addresses each of the three *Daubert* requirements as challenged by the Defendant, in turn.

### 2. Jaques Is Not Qualified to Render the Opinions Offered in his Preliminary Report

The Defendant contends that Jaques is unqualified to render his opinions because his background in security and law enforcement provide no basis for Jaques to provide

opinions as a liability/maritime safety expert relevant to the facts of this case, ECF No.

[37] at 7.  The undersigned agrees.

In the Preliminary Report, Jaques states that he has a background in the U.S.

military, in law enforcement as chief of security and safety officer aboard multiple cruise

ships, and as a private marine safety consultant, ECF No. [37-1] at 30.  With regard to his

duties as a Chief Security Officer, Jaques states that he was employed by Carnival

Corporation upon his return from the Gulf War sometime after 1990, until sometime in the

early 2000s, ECF No. [37-1].  In that capacity, he was responsible for supervising tender

operations in ports, and was trained for emergency situations such as fire and evacuation

as a lifeboat commander.  Jaques began to work for NCL in 2001 as full-time security

chief aboard various NCL vessels until he was deployed to Afghanistan in 2003.  Between

March 2005 and July 2006, Jaques worked as a security manager and safety officer

aboard Holland America Line vessels, ECF No. [37-1] at 31.  In his various on-board

vessel security officer positions, Jaques describes his scope of duties as follows:

> As security officer I investigated every accident and its cause
> that occurred on the vessel, on the pier, and during shore
> excursions. These accident (sic) numbered approximately 15
> to 25 per voyage.  My estimated total accidents and injuries
> investigated surpass 3,000 cases, both at sea and on land(sic)
> Accidents ranged from slip and falls, trip and falls, stairwells,
> head injuries, waterborne accidents, slide accidents, water
> park accidents, limb amputations, death at sea, man over
> board, criminal assaults, sexual assaults, tenders, gangways,
> ramps, engine room falls, burns, fires, food allergies, bike
> accidents, bus accidents, drowning, slide injuries, & scooter
> accidents, propeller accidents, and emergency medical
> evacuations at sea.

ECF No. [37-1] at 31.  Jaques also states that since 2008 he has owned and operated his

own marine/maritime security and safety consultancy, ECF No. [37-1] at 31.  In that

capacity, he states that the has performed hundreds of investigations and evaluations of

marine casualties involving cruise ships, and states that he is extremely well versed in the emergency operations, and capabilities of the United States Coast Guard during an air/sea emergency situation, ECF No. [37-1] at 31.

After a thorough review of Jaques' personal background, for the following reasons the undersigned concludes there is nothing in Jaques' qualifications that would indicate that he is an expert as to the cause and/or prevention of trip and falls related to the construction and/or warnings of door thresholds on ships, or whether there is an industry wide practice related to those warnings. While the Report indicates that Jaques has investigated over 3,000 accidents and injuries, including slips and falls and trip and falls, the Report fails to explain what actions Jaques took during the course of those "investigations." There is no statement that Jaques performed any type of analysis, either forensic or reconstructive, or did anything other than responding to and reporting such incidents. This point is made even clearer when the scope of the incidents which Jaques investigated is considered. It is difficult to believe that Jaques is an expert in all accidents and incidents that he has investigated which range from trips and falls to sexual assaults, to food allergies, limb amputations, and engine room fires, as described in his Report. In other words, that fact that Jaques may have responded to, collected facts related to and created a report for a host of different incidents on a ship, which reasonably could constitute an "investigation", does not mean that he is qualified to render an opinion on what constitutes industry standards to prevent trips on ships, or proper signage related to those accidents.

To be clear, the express language of Rule 702, provides that a witness does not need any particularized scientific training in order to be qualified to render an expert opinion but rather may be qualified as an expert by knowledge, skill or experience.

However in this case, the Plaintiff has failed to sufficiently explain Jaques' experience with the type of injury at issue or with regard to industry standards related to the incident at hand.  In this regard, the Report is devoid of any statements regarding Jaques' experience or training in examining signage or causation at the site of slip and fall accidents, the number of slip and falls (as opposed to other incidents), or in industry standards related to signage and slip/trip and falls. As such, Jaques is not qualified to render an opinion on proper signage, NCL's knowledge of the need for such signage, and Ms. LeRoux's likely reaction to the placement of such signage.  Further, the Plaintiff has failed to demonstrate that Randall Jaques is qualified to render an opinion on acceptable visual warnings, inadequate ship threshold construction or standards, and/or the causes of trips and falls.

Although Plaintiff is correct that Jaques has been qualified to testify as an expert in the past, this is not the end of the qualification analysis because the proffered expert must be an expert in the subject matter about which he proposes to testify. *United States v. Frazier,* 387 F. 3d 1244, 1260 (11th Cir. 2004).  As noted by the Defendant, Jaques' testimony was excluded in *Mendel v. Royal Caribbean Cruises*, Ltd., Case No. 10–23398-CIV-KING/MCALILEY, ECF No. [145], (S.D. Fla. 2012) as to all topics except his measurement of distances using a tape measure. In that case, Magistrate Judge McAliley recommended finding that Jaques was not qualified to testify regarding a hand railing because Jaques' experience as a security manager, safety officer, homicide investigator, and expert witness in maritime crime and accidents, failed to establish that Jaques was qualified to testify regarding the functionality of the design of handrail or on the necessity for instruction on the use of handrails; rather, Jaques had no expertise in the area of

kinematics, biomechanics, human factors or ergonomics.[3] The undersigned reaches the same conclusion in this case.

The cases cited by Plaintiff wherein the Jaques testimony was not excluded are not helpful to the resolution of this case because none of those cases found that Jaques was qualified to opine on the industry standards for design, safety and signage related to the physical structure of the ship. Rather, in *Meyer v. Carnival Corporation*, the Court cited Jaques for his knowledge of the existence of certain accidents that had previously occurred on excursions for passengers aboard Carnival cruises. *Meyer v. Carnival Corporation*, Case No. 12-20321-CIV-ZLOCH (S.D. Fla. Sept. 4, 2013). In *Lancaster v. Carnival Corp.*, Case No. 14-cv-20332-KMM (S.D. Fla. Feb. 22. 2015), Jaques was offered and accepted as an expert in crowd control. Finally, although the Court in *Higgs v. Costa Crociere S.p.A. Company*, 15-60280-CIV-COHN/SELTZER (S.D. Fla. January 11, 2016), found that Jaques was qualified to testify about industry standards for safety practices aboard cruise ships related to injuries sustained by a passenger when she tripped and fell over a cleaning bucket while walking from the buffet, the undersigned respectfully reaches a different conclusion as to whether Jaques' security and safety experience are sufficient for him to qualify as an expert regarding industry wide standards for signage for thresholds in cabins and whether such signage would have prevented the Plaintiff's fall.

Simply put, Jaques is not qualified to render the opinions for which Plaintiff has

---

[3] The Plaintiff contends that *Mendel* is inapposite because Jaques' exclusion in that case was because Jaques reviewed a different class of vessels and not the entire Royal Caribbean fleet. Plaintiff however fails to address the issues regarding the court's determination in *Mendel* that Jaques was not qualified to render some of the opinions that he offered related to the design and signage of the handrail because he lacked the requisite experience.

offered him in this case.

### 3. The Methodology Utilized by Jaques is Unreliable and His Opinions are Not Helpful to the Trier of Fact

The Defendant contends that Jaques has failed to provide any discernable methodology in rendering his opinions.  The question of whether an expert's testimony is reliable depends on the facts and circumstances of the particular case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158, (1999).  Given the facts of this case, Jaques' opinions lack the reliability required under *Daubert*.

Jaques states that for purposes of rendering an opinion in this case he: 1) reviewed the complaint and the Defendant's photographs taken aboard the Norwegian Epic; and, 2) conducted a telephonic interview with Mrs. Sherilyn J. LaRoux.  In his Preliminary Report, Jaques states that he was asked to provide opinions as to why Ms. LeRoux tripped and fell when coming inside her cabin from the balcony and to formulate opinions as to why NCL failed to place proper warning signed on the glass balcony doors and long the base of the threshold, ECF No. [37-1] at 1.  The undersigned concludes that Jaques' opinions on these topics do not provide reliable methodology to withstand the Defendant's Daubert challenge.  In fact, Mr. Jaques' Report fails to explain *any* methodology utilized in arriving at his opinions.[4]  Mr. Jaques' first opinion that  NCL's

---

[4] At the outset, the undersigned notes that the Amended Report was prepared after the expiration of the deadline for serving expert reports, and without seeking an extension of this deadline.  Thus, to the extent that the expert report offers new opinions regarding industry standards, it is not permissible.  Nevertheless, the undersigned will address these opinions in an abundance of caution.  Although the Plaintiff's Amended Report discusses industry standards in greater depth, (since the original report barely discussed them) the undersigned reaches similar conclusions regarding the deficient methodology utilized as to those opinions as well. The first of Jaques' four opinions in the Amended Report is that NCL's decision to not apply warning signs on the balcony glass door fails to comply with industry standards, ECF No. [38-2].  However, Mr. Jaques does not state what the industry standards are for this particular stateroom configuration, how he

failure to apply or attach any kind of visual warning sign to the glass door is at fault for Mrs. LeRoux tripping and falling as she entered the stateroom, provides absolutely no explanation for his methodology in arriving at his conclusion, ECF No. [37-1] at 34.  There is no evidence that Jaques has any experience with the placement of such signs, or that he has any particular expertise regarding the human kinetics and the ability to avoid a fall if such signs are so placed, and thus his failure to cite any literature, studies or other support renders the opinion unreliable.  Similarly, Jaques' second opinion that Norwegian Cruise Lines is at fault for failing to place additional yellow striping with black lettering on the threshold warning the passenger to "Watch your Step" and that NCL is aware of this type of safety warning because "they place these warning stripes throughout their vessels," fails to make any distinction between thresholds in cabins and patios and/or other doorways, and fails to specify where in the ship other step warnings are placed.  Again, Jaques fails to explain his basis for contending, other than presumably common sense, that if such a strip was placed at the threshold that Ms. LeRoux would have seen the high threshold and not tripped.  Finally, Jaques' statement

---

assesses what is considered industry-standard compliant or otherwise explain how through his prior experience in investigating these types of incidents he is able to determine that the failure to place a sign on the door would have prevented Ms. LeRoux from injuring herself.  The second opinion, that NCL is aware of visual safety warnings because they place safety warning throughout their vessel, appears to only be based on general observation, rather than a reliable methodology, or sufficient facts or data.   As to his final two opinions, Jaques refers to NCL's failure to comply with industry standards and SMS or SEMS shipboard management systems but fails to state what those standards or systems require and fails to provide any data to support his generalized, conclusory statements. Further, Jaques' report refers to another case in which a passenger "tripped and fell over a ramp threshold on the Norwegian Pearl."  ECF No. [38-2] at 7.  Jaques then describes how NCL thereafter added yellow and black caution tape to the ramp and added an eye level placard, and states that other cruise lines place warning signs "on all doors leading out (sic) open decks." ECF No. [38-2] at 7.  However, neither the prior NCL case cited by Jaques or his statement regarding precautions taken by other cruise lines, pertain to the situation presented in this case, the requirements or

that NCL is at fault for not following the industry standard as other cruise line companies do to prevent this type of accident from happening and warning the passenger of the safety hazard in front of them lacks any reference to what constitutes an "industry standard," how Jaques determines what that standard is and whether a particular ship has complied with the industry standard, and how he has determined that the failure to comply with the industry standard causes the type of accident at issue.  Jaques' opinions are the very type of ipse dixit that courts in this District have rejected. *Geyer v. NCL Bahamas Ltd.*, 203 F. Supp. 3d 1212, 1215 (S.D. Fla. Aug. 26, 2016) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) and stating "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. . . . A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). Indeed, the advisory committee notes for Rule 702 state that:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Fed. R. Evid. 702 advisory committee notes (2000 amends.) (emphasis added)).

Further, assuming *arguendo* that that Mr. Jaques' experience provides an adequate basis for him to offer opinions related to the issues at hand, and his methodology utilized in reaching those opinions is sound, those opinions still should not be admitted because they are not helpful to the trier of fact.  Testimony is considered helpful when it illuminates matters beyond the understanding of the average lay person.

---

industry standards for thresholds between cabins and balconies aboard a cruise ship.

*United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004). Generally, expert testimony will not assist the trier of fact and will be excluded if it "offers nothing more than what lawyers for the parties can argue in closing arguments." *Id*. at 1262–63. An expert witness may testify as to his opinion on an ultimate issue of fact, but he "may not testify as to his opinion regarding ultimate legal conclusions." *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009). Furthermore, merely telling the jury what result to reach is unhelpful and inappropriate. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

Here, Jaques' opinions fail to provide any information that is helpful to the fact finder because those opinions generally state that if someone sees a warning sign to watch his/her step, that he/she is less likely to trip and fall. However, because those opinions are not based on any particular assessment beyond that of a lay person, and have not been sufficiently connected to Jaques' experience, they do not satisfy the helpfulness prong of *Daubert*.

Finally, the undersigned notes that other courts in this district have also excluded Jaques' testimony based on their conclusion that the methodology utilized by Jaques was not reliable, and that the opinions offered by Jaques were not helpful to the trier of fact. In *Umana–Fowler v. NCL (Bahamas), Ltd.*, No. 13–cv–23491, 2014 WL 4832297, at *3 (S.D. Fla. Sept. 19, 2014), Judge Williams excluded Mr. Jaques as an expert in a maritime case. The plaintiff in *Umana–Fowler* sought to introduce Mr. Jaques' testimony as a crowd control expert in a case "where one passenger bumped into another." *Umana–Fowler,* 2014 WL 4832297, at *3. The court found that Mr. Jaques' opinions did not meet the reliability and helpfulness prongs of *Daubert* where Jaques failed to elaborate how he conducted his analysis, and Plaintiff failed to demonstrate that the issue upon which he

opined was relevant to the issues in the case. Similarly, in *Fraley v. Oceania Cruise, Inc.*, No. 13-20244-CIV, 2015 WL 1131015 (S.D. Fla. March 12, 2015), the Court excluded Mr. Jaques from testifying finding that the methodology employed by Mr. Jaques was not reliable and that his opinions would not assist the trier of fact. *Id.* at *8-9. Finally, and as noted by the Defendant, Jaques' testimony was excluded in *Mendel v. Royal Caribbean Cruises*, Ltd., Case No. 10–23398-CIV-KING/MCALILEY (S.D. Fla. 2012) as to all topics except his measurement of distances using a tape measure. In that case, Magistrate Judge McAliley recommended excluding Jaques's opinions because they were not based on a reliable methodology and would not be helpful to the jury because they concerned issues of common understanding.

Accordingly, the undersigned concludes that Jaques' opinions and testimony should be excluded in this case because the Plaintiff has failed to demonstrate that Jaques is qualified to render such opinions, that the methodology utilized by Jaques was reliable and that Jaques' opinions would be helpful to the trier of fact.

C.    *Application of Daubert and Rule 702 to Laughlin's Testimony*

1.    John Laughlin's Preliminary Report

The Defendant also challenges whether Mr. Laughlin's opinions are reliable and are of assistance to the trier of fact in this case. In his Preliminary Report, Mr. Laughlin offers the following opinions:

1.    The threshold in Ms. LeRoux's suite leading to and from the patio, was a trip hazard.

2.    NCL did not adequately warn patrons of this hazardous situation.

3.    NCL could have warned of the hazard by utilizing a warning sticker on the door and noticeable paint on the threshold.

18

4. NCL could have mitigated the hazardous situation by installing a ramp on the outside of the doorway and a code-compliant landing on the inside.

5. Inadequate lighting on the patio would have made the threshold lens visible and more likely to cause a trip.

ECF No. [37-1]. For the following reasons, the undersigned concludes that Laughlin's opinions related to whether the threshold in Ms. LeRoux's suite constituted a hazard for which NCL failed to adequately warn Ms. LeRoux are admissible. However, Laughlin's opinions related to inadequate lighting are not sufficiently reliable and should be excluded.

2. Laughlin is Qualified to Offer the Opinions in His Preliminary Report

Although the Defendant does not challenge whether Mr. Laughlin is qualified to render an opinion regarding the safety and signage related to the Plaintiff's ship-board cabin, the undersigned nevertheless has reviewed Laughlin's qualifications in assessing whether his testimony should be excluded. Based on a review of Laughlin's credentials and his Report, the undersigned concludes that he is qualified to testify as expert regarding whether the threshold between the Plaintiff's cabin and the patio was a hazard and whether that hazard could have been mitigated by NCL.

According to his Preliminary Report, Mr. Laughlin received a Bachelor of Science in Bioengineering in 1993, and a Master of Bioengineering in 1995, ECF No. [37-1] at 7. Laughlin currently works as a biomedical and mechanical engineer at the Laughlin Engineering Firm, LLC., ECF No. [37-1] at 14. Laughlin's Curriculum Vitae ("CV") identifies a number of areas of expertise including, injury potential/causation, human factors, including visibility, perception/reaction and ergonomics, Accidents/Mechanical

19

Engineering, including slips/trips and falls, and pedestrian incidents, ECF No. [37-1] at 14. The CV additionally provides that as a forensic engineer, Laughlin has reconstructed accidents involving, among other things, pedestrians and walking surfaces, ECF No. [37-1] at 15. The CV states that Laughlin has testified over sixty-five times, and has worked in the orthopedic biomechanics, studying human kinematics.

### 3. Laughlin's Methodology and Helpfulness to Trier of Fact

Similarly, the undersigned concludes that the methodology utilized by Mr. Laughlin in arriving at his opinions about the safety hazard associated with the threshold and the failure of NCL to warn of that hazard satisfies the requirements of *Daubert* and 702. Further, Mr. Laughlin's opinions regarding the hazards and warnings related to the threshold will be helpful to the trier for fact.

To prepare his Report, Laughlin reviewed photographs of the incident doorway, measurements of the incident threshold, photographs of thresholds from similar suites, examples of warning signage for similar raised thresholds, Plaintiff's Original Complaint, Defendant's Better Response to Plaintiff's First Request for Production, Plaintiff's Answers to First Set of Interrogatories from Defendants, United States Access Board: Chapter 12 US Coast Guard CFR Report, United States Access Board: Recommendation for Accessibility Guidelines for Passenger Vessels: Final Report Summary and the International Building Code, ECF No. [37-1] at 7-8.

As to the methodology applied, the Report states that Laughlin considered photographic evidence and measurements, conducted an application of building standards and code to the incident threshold and determined appropriate warnings and preventative measures, ECF No. [37-1] at 8. The Report states that the methodology and/or testing is generally accepted and relied on by the engineering community for the

analysis of slip and fall events, ECF No. [37-1] at 8.

The Report concludes that the threshold at issue was a trip hazard, and that there were not adequate warnings of the hazardous situation, ECF No. [37-1] at 10. In addition, the Report concludes that NCL could have warned of the hazard by utilizing a warning sticker on the door and noticeable paint on the threshold, and/or mitigated the hazardous situation by installing a ramp on the outside of the doorway and a code-compliant landing on the inside, ECF No. [37-1] at 10. In addition, the Report concluded that inadequate lighting on the patio would have made the threshold less visible and more likely to cause a trip. ECF No. [37-1] at 10.

The Defendant contends that Laughlin's methodology is unreliable because he relied, in part, on the International Building Code ("IBC"), which does not apply to cruise ships. Defendant thus contends that although experts can rely on non-binding regulations to offer opinions, the expert must still demonstrate how the regulation is applicable at all. However, Mr. Laughlin's report did, in fact, explain why the International Building Code was applicable in this case, as follows:

> While [the International Building Code] may not be used for nautical applications, it illustrates the standard to which most pedestrians are accustomed. For pedestrians unaccustomed to nautical construction, the 5 ½ inch elevation change is a trip hazard, because it rises far above the expectation that a land-based pedestrian would have at a doorway threshold.

[37-1] at 9. District court judges in the Eleventh Circuit have followed the rule that failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted. *Holderbaum v. Carnival Corp.*, No. 13-24216-CIV, 2015 WL 5006071, at *5 (S.D. Fla. Aug. 23, 2015) (citing *Cook v. Royal Caribbean Cruises, Ltd.,* No. 11-20723-CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012); *Darville v.*

21

*Rahming Shipping, Ltd.*, No. 85-1282-CIV, 1987 WL 48393, at *10 (S.D. Fla. Dec. 17, 1987)).

Thus, in this case, even if the IBC is not mandatory on cruise ships, Laughlin's

explanation regarding the Plaintiff's expectation pertaining to the height of the doorway

threshold based on the standard IBC-complaint doorways is reliable.  To the extent that

the Defendant disagrees with whether a land-based pedestrian would hold such an

expectation is an issue that goes to the weight of the testimony and is not a basis for

excluding Laughlin's conclusion.

Moreover, based upon the photographs provided to Mr. Laughlin, and the

measurements of the doorway and threshold reflected in those photographs, the Report

discusses the height of the threshold and the warning stickers on the door of the

threshold.  In addition, the Report then goes on to discuss the United States Access

Board, Chapter 13 US Coast Guard Report section 404.2.5, and the threshold height and

ramp requirements outlined in that section, ECF No. [37-1] at 9.  The Report concludes

that the threshold at issue is a trip hazard based on the change in elevation and the

absence of a ramp.  Further, the Report refers to a United States Access Board published

document regarding high thresholds on ship.  Finally, the Report assumes that the raised

threshold was an unavoidable characteristic of the subject doorway and therefore NCL

should have provided an adequate warning to the patrons. Thus, the Report sets forth a

methodology and analysis regarding the safety of the threshold sufficient to satisfy the

reliability prong of *Daubert*.

Further, such determinations clearly would be helpful to the trier of fact because

the average lay person likely is unfamiliar with the construction, design, and warnings

necessary to provide a passenger with safe egress/ingress into a cabin with a particularly

high threshold and certainly is unfamiliar with the various standards that discuss those

issues.  Mr. Laughlin's opinions regarding the hazards associated with the threshold leading from the suite to the patio, the warnings related to that threshold and NCL's potential mitigation of the hazard should not be excluded based upon the *Daubert* analysis.

However, the undersigned finds that Mr. Laughlin's conclusions regarding the inadequate lighting are not supported by a reliable methodology.  On this point the Report states, "Reportedly, the accident occurred at dusk and the patio was not adequately illuminated at the time of the accident.  Inadequate lighting only serves to make the incident threshold less visible and more likely to cause a trip." [37-1] at 10.

There is no reference to any scientific or industry standards in the Report on this issue, or any description of any methodology to determine what would constitute adequate lighting on the patio given the threshold.  In addition, presumably not all lighting is the same throughout the period described as "dusk" and there likely are a multitude of factors that may alter how much light is available at that time of day.  The Report is devoid of any detail in this regard and also fails to explain how any such variances were accounted for in arriving at the conclusion that the patio was not adequately illuminated at the time of the accident.

Further, the conclusion offered by Mr. Laughlin regarding the lighting is not beyond the knowledge of a lay person and thus is not helpful to the trier of fact because Laughlin did not provide any scientific-based, or literature-based analysis related to this issue and most people are aware that inadequate lighting makes walkways less visible and increases the likelihood of a trip.  Accordingly, the undersigned concludes that Mr. Laughlin's opinions regarding adequate lighting should be excluded.

**IV.**    <u>CONCLUSION</u>

Accordingly, it is

ORDRED that Defendant's Daubert Motion to Strike Plaintiff's Expert Witnesses Randall Jaques and John Laughlin, ECF No. [37] is GRANTED, in part, and DENIED, in part, as set forth above in this Order. To the extent that the Defendant seeks to exclude the testimony of Randall Jaques, the Motion is GRANTED. To the extent that the Defendant seeks to exclude the testimony of John Laughlin, the Motion should is DENIED, except as to Mr. Lauhglin's opinions regarding the lack of adequate lighting.

DONE AND ORDERED in Chambers in Miami-Dade County, Florida, this 19th day of June, 2017.

_Andrea M. Simonton_
_____
ANDREA M. SIMONTON
CHIEF UNITED STATES MAGISTRATE JUDGE


Copies via CM/ECF to:
    The Honorable Kathleen M. Williams

    All parties of record